# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

№ 10-CV-3660 (JFB)(SIL)

DEBBIE ZAGAJA,

Plaintiff,

VERSUS

VILLAGE OF FREEPORT & ANDREW HARDWICK,

Defendants.

**MEMORANDUM AND ORDER**
June 3, 2015

JOSEPH F. BIANCO, District Judge:

Defendants the Village of Freeport ("Village") and Andrew Hardwick ("Hardwick") (collectively, "defendants") move to dismiss the complaint filed by plaintiff Debbie Zagaja ("plaintiff" or "Zagaja"), pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(c), 12(h)(2), 12(h)(3), and 56. Zagaja alleges that she suffered gender, race, and/or color discrimination stemming from harassment, a hostile work environment, her demotion, and defendants' failure to promote her to a command staff position, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"); the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290; and 42 U.S.C. §§ 1981, 1983. She also claims that defendants retaliated against her in response to her protected activities.[1]

In the present motion, defendants argue that the complaint must be dismissed because: (1) the Deputy Chief and Assistant Chief of Police positions are policymaking positions that are exempt from the protections of Title VII and, therefore, the related discrimination claims are subject to the exclusive jurisdiction of the Equal Employment Opportunity Commission

---

[1] The Court previously granted summary judgment to defendants on plaintiff's hostile work environment claim, and her claim of gender discrimination as it relates to the female superior officers' locker room, but denied judgment with respect to the employment discrimination claims relating to plaintiff's demotion from Deputy Chief and defendants' failure to promote plaintiff to Assistant Chief and Chief of Police, the retaliation claim, and Hardwick's qualified immunity. *Zagaja v. Vill. of Freeport*, No. 10-CV-3660 (JFB)(WDW), 2012 WL 5989657 (E.D.N.Y. Nov. 20, 2012) [hereinafter, "November 20 Memorandum and Order"]. The Court also denied defendants' motion for reconsideration. *Zagaja v. Vill. of Freeport*, No. 10-CV-3660 (JFB)(WDW), 2013 WL 2405440 (E.D.N.Y. June 3, 2013) [hereinafter "June 3 Memorandum and Order"].

("EEOC") and the Second Circuit Court of Appeals pursuant to the Government Employee Rights Act of 1991 ("GERA"), 42 U.S.C. § 2003e-16 *et seq.*; (2) plaintiff has not exhausted her administrative remedies with respect to the Chief of Police position because her EEOC charge was facially deficient and she was denied a promotion to that position months after she filed the charge; and (3) the retaliation claim cannot survive because plaintiff cannot establish that any protected activity was the "but for" cause of her failure to be promoted, pursuant to *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517 (2013).

As a threshold matter, the Court concludes that the policymaker defense and the exhaustion issue are properly before the Court at this juncture and have not been waived. Thus, the Court has considered the merits of defendants' motion and, for the reasons set forth below, the motion is granted in part and denied in part. First, with respect to the policymaker defense, the Court concludes that the positions of Deputy and Assistant Chief of Police are exempt from the coverage of Title VII and, as a result, the Court lacks subject matter jurisdiction over plaintiff's related discrimination claims. Thus, the discrimination claims relating to the Deputy and Assistant Chief of Police positions must be pursued through the procedures provided in the Government Employees Civil Rights Act of 1991, 42 U.S.C. § 2000e-16a *et seq.* – namely, a final order from the EEOC with appeal to the Court of Appeals. Second, with respect to the discrimination claim regarding the Chief of Police position, the Court concludes that plaintiff adequately exhausted her administrative remedies before the EEOC with respect to that claim. Finally, with respect to the retaliation claim, construing the evidence in the light most favorable to plaintiff, a reasonable jury could conclude that plaintiff's protected activities were the "but for" cause of defendants' failure, among other things, to promote plaintiff to a command staff position. Thus, the retaliation claim survives summary judgment even under the Supreme Court's new standard for retaliation claims articulated in *Nassar*. Accordingly, the Chief of Police-related discrimination claim and the retaliation claim will proceed to trial.

I. PROCEDURAL BACKGROUND[2]

Plaintiff filed the complaint in this action on August 11, 2010. Defendants interposed an answer on October 20, 2010. On January 23, 2012, defendants moved for summary judgment. The Court issued an oral ruling granting in part, and denying in part, defendants' motion on August 13, 2012. Plaintiff filed an amended complaint on August 21, 2012. On September 10, 2012, defendants filed a Notice of Appeal. The Court issued a written Memorandum and Order with respect to the summary judgment motion on November 20, 2012. On December 10, 2012, defendants again filed a Notice of Appeal. On December 12, 2012, defendants filed a motion for reconsideration. The Court denied the motion in its entirety on June 3, 2013. In the interim, defendants retained new counsel. On July 31, 2013, the Second Circuit dismissed defendants' appeal for lack of appellate jurisdiction.

Defendants filed the instant motion on September 30, 2013. Plaintiff opposed on November 6, 2013. Defendants replied on November 21, 2013. The Court held oral argument on December 11, 2013. Plaintiff filed a sur-reply on December 18, 2013. Defendants submitted supplemental

---

[2] The Court assumes familiarity with the factual background of this matter. The Court discusses relevant facts *infra* Section III.

authorities on January 14, 2014. The Court has fully considered the parties' submissions.

## II. STANDARDS OF REVIEW

### A. Subject Matter Jurisdiction

To defeat a motion to dismiss brought under Fed. R. Civ. P. 12(b)(1), "[t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). In resolving this issue, the court "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). Additionally, the court "may refer to evidence outside the pleadings" to resolve the jurisdictional issue. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)).

### B. Failure to Exhaust

Defendants argue that plaintiff failed to exhaust her administrative remedies before the EEOC with respect to the discrimination claim that relates to the Chief of Police position. A "dismissal for failure to exhaust administrative remedies is more properly characterized as a dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6)." *McInerney v. Rensselaer Polytechnic Inst.*, 505 F.3d 135, 138 (2d Cir. 2008) (citing *Fernandez v. Chertoff*, 471 F.3d 45, 58 (2d Cir. 2006)). After the pleadings are closed, as here, a motion to dismiss for failure to state a claim is properly brought as a motion for judgment on the pleadings pursuant to Rule 12(c). *Maggette v. Dalsheim*, 709 F.2d 800, 801 (2d Cir. 1983) (citations omitted); *see* Fed. R. Civ. P. 12(c), 12(h)(2). The motion is then treated according to the same standard as a motion under Rule 12(b)(6). *See* 709 F.2d at 801–02.

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662 (2009). The Court instructed district courts first to "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

In adjudicating a Rule 12(b)(6) motion, a court is entitled to consider: "(1) facts alleged in the complaint and documents

attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356–57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part & rev'd in part on other grounds sub nom. Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005).

## C. Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). The moving party bears the burden of showing that he is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (alteration and emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249–50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties alone will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or

facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

III. DISCUSSION

A. Plaintiff's Objection to the Motion

Plaintiff objects to the motion on the grounds that defendants raised the policymaker defense for the first time in their reply papers in support of the motion for reconsideration, not in their Answer. (Opp'n at 1.) Plaintiff also argues that, although defendants have the right to move to dismiss for lack of subject matter jurisdiction, whether plaintiff was a policymaker is an issue of fact that should be left for a jury. (*Id.* at 4.) Finally, plaintiff argues that defendants waived the administrative exhaustion defense. (*Id.* at 11–12.) As the Court stated during the oral argument, the Court shall decide the motion on the merits.

First, as set forth *infra*, the policymaker defense implicates this Court's subject matter jurisdiction. "Issues relating to subject matter jurisdiction may be raised at any time, even on appeal, and even by the court *sua sponte*." *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 449 (2d Cir. 2013); *accord Hughes v. Patrolmen's Benev. Ass'n of City of N.Y., Inc.*, 850 F.2d 876, 881 (2d Cir. 1988). Further, "subject matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). Therefore, the Court can address the policymaker defense at this juncture. Moreover, because whether the Assistant and Deputy Chief of Police positions are covered under Title VII is not "an essential element of a claim" that requires the jury to try contested facts, but a jurisdictional issue, this Court may review the evidence and resolve any factual disputes that affect its subject matter jurisdiction at this stage.[3] *See id.* at 501–02 (concluding that Congress made Title VII's employee-numerosity requirement an element of a plaintiff's claim for relief, not a jurisdictional issue).

Second, failure to exhaust is not jurisdictional and, thus, must be considered under Rule 12(b)(6). *See Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000) ("[A]s a general matter, the failure to exhaust administrative remedies is a precondition to bringing a Title VII claim in federal court, rather than a jurisdictional requirement." (internal quotations and citations omitted)); *see also Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) ("[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."). Courts have found waivers of non-jurisdictional arguments and defenses where the issue has not been asserted "prior to the close of trial on the merits," *Arbaugh*, 546 U.S. at 504 (holding that defendant waived numerosity of employees requirement under Title VII by failing to assert the objection prior to the close of trial on the merits), or where it is not raised until after judgment has been entered, *Francis*, 235 F.3d at 768 (holding that exhaustion defense was waived where defendants raised it for the first time in a

---

[3] In any event, as discussed *infra*, the plaintiff's own evidence demonstrates that the policymaker defense applies in the instant case to the Deputy and Assistant Chief Positions. Thus, there are no factual disputes that need to be resolved for the Court to decide this issue as a matter of law because the uncontroverted facts demonstrate that the defense applies and that the Court does not have subject matter jurisdiction over those claims. Accordingly, even assuming *arguendo* that this issue was not jurisdictional, the Court concludes that defendants would be entitled to summary judgment on this issue under Rule 56.

5

post-judgment motion). By way of contrast, the exhaustion defense has been found not waived where it is asserted before trial, does not require additional discovery, and is not premised on bad faith. *Belgrave v. Pena*, 254 F.3d 384, 387 (2d Cir. 2001) (upholding district court's decision to permit government to amend answer to state affirmative defense of untimely exhaustion). Here, defendants have asserted the exhaustion defense before trial, additional discovery is not required, and there is no evidence that defendants are acting in bad faith. Therefore, the Court concludes that defendants have not waived the exhaustion defense and construes the defense (which has been raised, inter alia, under Rule 56) to be a motion to amend the answer.[4] *See Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 283 (2d Cir. 2000) ("the district court has the discretion to entertain the defense when it is raised in a motion as one to amend the defendant's answer").

B. <u>Deputy and Assistant Chief Positions</u>

Defendants contend that the Deputy and Assistant Chief of Police titles are policymaking positions not covered by Title VII, and, therefore, that this Court lacks subject matter jurisdiction over the related discrimination claims. For the reasons set forth below, the Court agrees.

1. Legal Standard

Title VII prohibits discrimination against an employee based on her gender, race, and/or color. *See* 42 U.S.C. § 2000e-2(a). Title VII expressly exempts the following persons from the definition of "employee":

> [a]ny person elected to public office in any state or political subdivision of any State by the qualified voters thereof, any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate advisor with respect to the exercise of the constitutional or legal powers of the office.

*Id.* § 2000e(f). Thus, the provision excludes four categories of workers from Title VII's protections: (1) elected officers; (2) individuals chosen by such an officer to be members of her "personal staff"; (3) such officer's appointees on the policymaking level; or (4) an immediate advisor with respect to the exercise of the powers of the office. The exemption does not include "employees subject to the civil service laws of a State government, governmental agency or political subdivision." *Id.* "The question of who is an exempt employee is a matter of federal, not state law, although state law may clearly illuminate the job responsibilities and status of individual considered under the statute." *Bland v. New York*, 263 F. Supp. 2d 526, 536 (E.D.N.Y. 2003) (citing *Calderon v. Martin Co.*, 639 F.2d 271, 272–73 (5th Cir. 1981); *EEOC v. Reno*, 758 F.2d 581, 584 (11th Cir. 1985) ("[S]tate law is relevant insofar as it describes the plaintiff's position, including his duties and the way he is hired, supervised and fired.")).

The Second Circuit has addressed the "appointee on a policy making level" prong of the exemption. *See, e.g.*, *Butler v. N.Y. State Dep't of Law*, 211 F.3d 739 (2d Cir. 2000) [hereinafter *Butler II*] (holding on summary judgment that Deputy Bureau Chief in Attorney General's Office was

---

[4] Similarly, the Court has discretion to entertain successive dispositive motions. *See Sira v. Morton*, 380 F.3d 57, 68 (2d Cir. 2004). Given that the defendant's non-jurisdictional portions of the motion raises new issues, including an issue based on an intervening change in the law for retaliation claims, the Court, in the exercise of its discretion, will consider this second dispositive motion.

6

policymaker exempted from protection under Title VII); *Tranello v. Frey*, 962 F.2d 244 (2d Cir. 1992) (holding under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, that policymaker must be chosen by elected official in order to fall under exemption);[5] *EEOC v. Vermont*, 904 F.2d 794 (2d Cir. 1990) (considering under ADEA whether appointed state judges were policymakers under the exemption, and holding that policymaking category was intended to comprise only those policymakers working closely with the appointing elected official), *overruled on other grounds by Gregory v. Ashcroft*, 501 U.S. 452 (1991). According to the Second Circuit, an individual is a policymaker and therefore excluded from the protections of Title VII if she (1) is appointed by an elected official and (2) "would normally work closely with and be accountable to" the official who appointed her. *Butler*, 211 F.3d at 748 (quoting *Tranello*, 962 F.2d at 250; *Vermont*, 904 F.2d at 800). The court must look to the general attributes of the position, not the actual performance of the job, to determine whether the employee could be required to work closely with the appointing official. *Id.* at 748–49 ("We do not find merit in Butler's argument that she herself did not work closely with the AG, but rather focus on the requirements of the Deputy Bureau Chief position. The resolution of the issue turns on whether it was part of the job of a Deputy Bureau Chief to work closely with the AG."); *see Kelley v. City of Albuquerque*, 542 F.3d 802, 810 (10th Cir. 2008) ("We focus principally on the responsibilities and powers inherent in the position, rather than on the actions of specific individuals, including plaintiffs, who hold or have held the position. . . . Accordingly, the fact that a particular occupant of a position has engaged in certain conduct that suggests that the position is covered by an exemption does not necessarily mean that the position actually is one that warrants exemption coverage." (citations omitted)); *Bland*, 263 F. Supp. 2d at 544 (noting that court may take notice of applicable statutes and administrative materials under which plaintiff was appointed and performed her job to determine whether she fell within personal staff exemption).

If an individual falls within the exemptions to Title VII, the district court lacks subject matter jurisdiction to adjudicate her claims. *Butler v. N.Y. State Dep't of Law*, 998 F. Supp. 336, 344 (S.D.N.Y. 1998) [hereinafter *Butler I*] ("if Ms. Butler is found to be a policymaker under these statutes [*i.e.*, Title VII and the ADEA], this Court would be without subject matter jurisdiction to adjudicate her claims"), *aff'd,* 211 F.3d 739 (2d Cir. 2000); *Fischer v. New York State Dep't of Law*, No. 12 Civ. 421 (ALC), 2014 U.S. Dist. LEXIS 94022, at *4 (S.D.N.Y. June 20, 2014) (addressing a policymaker defense in the context of a motion to dismiss for lack of subject matter jurisdiction). Instead, those persons who are exempt from the protections of Title VII, including state employees, are protected under GERA, codified at 42 U.S.C. §§ 2000e-16 *et seq*. *Butler I*, 998 F. Supp. at 344; *see* 42 U.S.C. § 2000e-16c (providing that rights, protections, and remedies provided pursuant to § 2000e-16b apply with respect to any individual chosen or appointed by an elected official of any state or political subdivision of any state to be a member of the elected official's personal staff, to serve the elected official on a policymaking level, or to serve

---

[5] Because Title VII and the ADEA use the same definition of employee, cases discussing who is an "appointee on the policymaking level" under both statutes apply here. *See, e.g.*, *Costenbader-Jacobson v. Pennsylvania*, 227 F. Supp. 2d 304, 309 n.2 (M.D. Pa. 2002) (citing 29 U.S.C. § 630(f) (ADEA definition of employee)).

the elected official as an immediate advisor with respect to the exercise of the constitutional or legal powers of the office). GERA requires a plaintiff to obtain a final determination by the EEOC appealable only to the United States Courts of Appeals. 42 U.S.C. § 2000e-16b(b)–(c); *see Spann-Wilder v. City of N. Charleston*, C.A. No. 2:08-0156-MBS, 2010 WL 3222235, at *7–8 (D.S.C. Aug. 13, 2010).

2. Application[6]

Defendants argue that the Deputy and Assistant Chief of Police titles are exempt from Title VII because (1) the positions are filled by Village Board appointment, and the premise of plaintiff's complaint is that Hardwick wanted to replace current command staff with his people; (2) plaintiff, as Deputy Chief, was required to work closely with the appointing elected officials; and (3) plaintiff had supervisory responsibilities over the Police Department. Plaintiff counters that (1) she was promoted to Deputy Chief by then-Chief Michael Woodward ("Woodward"), while then-Mayor Glacken ("Glacken") simply approved the promotion; (2) plaintiff did not work closely with the elected officials; and (3) these assertions do not conflict with her theory of the case, because "Hardwick took any and every step to involve himself in the personnel decisions throughout the village," and "[t]hat Hardwick involved himself in appointing the current deputy chief and recommending an assistant chief does not mean that he was responsible for making these appointments." (Sur-reply, at 2.)

a. Appointment by an Elected Official

The first issue is whether plaintiff was appointed by an elected official. The "mere fact" that an elected official must approve or consent to the appointment of an employee by another appointed official does not mean that that employee is exempt from the protections of Title VII. *Tranello*, 962 F.2d at 250; *see Crumpacker v. Kan. Dep't of Human Res.*, 474 F.3d 747, 753–55 (10th Cir. 2007). Instead, to determine whether a person is appointed by an elected official under Title VII, the court must (1) consider and decide the meaning of the applicable laws and regulations governing the position; and (2) if the law is indeterminate and does not unambiguously and unqualifiedly vest appointment power in a specific elected or non-elected official, look to the underlying facts surrounding the appointment to help answer the question. *Crumpacker*, 474 F.3d at 753–54.

In *Tranello*, the Second Circuit considered whether the plaintiff, a deputy county attorney appointed by the county attorney, who himself was appointed by the elected county executive, fell within ADEA's policymaker exemption. *See* 962 F.2d at 245. The court held that the plaintiff was not appointed by an elected official and, therefore, that he did not fall within the policymaker exemption. *Id.* at 249. The court rejected the "strained" argument that plaintiff was appointed by an elected official because the county attorney could only appoint deputy county attorneys with the county executive's approval. *Id.* at 250 ("The mere fact that the County Executive must approve the County Attorney's appointee does not convince us that the appointee would be a 'policymaker working closely with the elected official,' and does

---

[6] At a pre-motion conference in a related case, *Zagaja v. Village of Freeport, et al.*, 15-CV-1017 (JFB) (SIL), counsel for defendants suggested that additional evidence regarding this issue would be submitted in a motion to dismiss in that case, and that the Court may wish to consider it. However, for the reasons set forth *infra*, the Court finds that the policymaking exemption applies based upon the record in this case and, thus, any request by defendants that the Court consider new evidence is moot.

not compel the conclusion that the Deputy County Attorney is an appointee of the County Executive."). The Second Circuit, however, has not foreclosed the possibility that an elected official who consents to, or rejects, the appointment of an employee recommended by an appointed official could be considered the actual appointing official under certain circumstances.

Similarly, in *Crumpacker*, the Tenth Circuit considered whether the plaintiff, formerly the Director of Employment and Training within the Kansas Department of Human Resources ("KDHR"), fell under Title VII's policymaker exemption. Pursuant to a state statute, the appointed KDHR Secretary, with the "consent" of the elected Governor of Kansas, appointed plaintiff to that position. 474 F.3d at 750. First, the court emphasized that, under its precedent, "an elected official's participation in the selection process alone would not demonstrate compliance with the appointment requirement, especially where the employee did not work with the elected official in the 'intimate and sensitive association contemplated by [the legislature].'" *Id.* at 752 (quoting *Anderson v. City of Albuquerque*, 690 F.2d 796, 800 (10th Cir. 1982)). Second, the court rejected the argument that the consent requirement constituted an appointment, reasoning that (1) the plain language of the statute vested the appointment power with the KDHR Secretary, and any participation by the Governor in the plaintiff's appointment did "not subsume the Secretary's ultimate appointment responsibility in the hiring process"; (2) to the extent the "consent" requirement created any ambiguity, the record indicated that the KDHR Secretary, not the Governor, interviewed and appointed the plaintiff, made the decision to hire and fire the plaintiff, controlled her day-to-day responsibilities, and monitored her performance; and (3) this was not a case "where the noted statutory ambiguity would allow a record of active involvement by the Governor to render an appointment gubernatorial." *Id.* at 753–55; *see also Kelley*, 542 F.3d at 811 (concluding that assistant city attorney was not exempt from Title VII because, *inter alia*, ordinances vested ultimate power to appoint assistant attorneys in appointed chief administrative officer, and testimony revealed that mayor had minimal involvement with hiring assistant city attorneys and had no power to terminate them).

In *Pahmeier v. Marion Community Schools*, the district court, citing *Tranello*, concluded that "an appointee on the policymaking level" under the ADEA "corresponds to an elected official who designates such person to serve at the elected official's will." No. 1:04-CV-365-TS, 2006 WL 1195213, at *3 (N.D. Ind. May 1, 2006). The court concluded that the plaintiff, a former school principal, was protected by the ADEA because (1) the elected school boards did not have the statutory authority to appoint principals to serve at their pleasure and had to give clearly specified notice prior to any principal's discharge, a situation "radically different from the protections given to political appointees . . . who can be removed by subsequent decrees [by elected officials] if the political tide changes or voters' patience begins to wear out"; (2) plaintiff's rights under her contract indicated that she had due process protections not available to political appointees; and (3) in practice in Indiana public school systems, principals are appointed by and accountable to appointed superintendents, whose appointments are ratified by the elected board. *Id.* at *3–4.

Here, pursuant to Section 4-400 of the Village Law, mayors are responsible for "appoint[ing] all department and non-elected officers and employees subject to the

9

approval of the board of trustees, however, the mayor may delegate the power to appoint certain employees to other village officers or employees." N.Y. Vill. Law § 4-400(1)(c)(i). Mayors also are responsible for supervising the conduct of the police. *Id.* § 4-400(1)(e). The Rules and Regulations of the Freeport Police Department provide that the Chief of Police is responsible for directing department personnel activities and "for the selection of competent personnel for employment with the Department and [for maintaining] adequate staffing to properly perform the police function." (Freeport Police Department Rules and Regulations §§ 200.10(3), 200.20(4), Sur-reply Ex. 2.) Further, it is undisputed that then-Mayor Glacken appointed plaintiff to the Deputy Chief position based upon the recommendation of Woodward and former Assistant Chief Alfred Gros ("Gros").[7]

The law and regulations in this case are distinguishable from *Tranello*. In *Tranello*, the appointment power was vested in the non-elected county attorney, with approval of the elected county executive. Here, the appointment power is actually vested in the elected official (*i.e.*, the Mayor). Although the Rules and Regulations of the Police Department create some ambiguity in the precise role of the Mayor in the selection process, the Court disagrees with plaintiff's contention that the Rules and Regulations *unambiguously* transferred the appointment power to the Chief of Police. First, there is no formal, explicit delegation of the appointment power by the Mayor to another official in the Village Law, or even in the language of the Rules and Regulations themselves. Second, although the regulations make the Chief of Police responsible for the selection of competent personnel in the Department, the Village Law (by its language) also appears to continue to authorize the Mayor to participate (if he wishes) in that selection process through his appointment power. In other words, there is nothing in the Rules and Regulations, especially in light of the Village Law, that precludes the Mayor from having a substantive and active role in the appointment process (even if the Police Chief is responsible for making a selection and recommendation). In short, the Court is not persuaded that the Village Law and Rules and Regulations unambiguously establish that the appointed positions at issue are protected by Title VII, and not subject to the policymaker exemption. Instead, as in *Crumpacker*, the Court concludes that the Village Law, combined with the Rules and Regulations, create an ambiguity on this question. Thus, in order to decide this issue, the Court looks to the underlying facts surrounding the appointments at issue here and, as set forth below, the uncontroverted evidence demonstrates that an elected official (Mayor Hardwick) did not merely "approve" the appointment of individuals for the Deputy and Assistant Chief positions at issue, but rather played an active role in the selection process.

As an initial matter, although plaintiff contests defendants' ability to satisfy this requirement, defendants correctly note that plaintiff's entire theory of the case rests upon their assertion that the elected Mayor himself, acting in a discriminatory manner, was actively involved in the selection process for these two positions. For example, the Amended Complaint alleges:

> In October of 2009, Zagaja was informed that in March of 2010 she would be demoted, that she would no

---

[7] Former Trustee Donald K. Miller also stated, "When the Chief came to recommend Debbie into the Deputy Chief spot [in 2007] there was no discussion on the part of the board of trustees of not giving her the promotion as she was so clearly competent and qualified." (Affidavit of Donald K. Miller ¶ 17, Finkel Aff. Ex. A.)

10

longer be Deputy Chief. The Village attorney told Deputy Chief Zagaja that "right, wrong or indifferent," *the Mayor* would be replacing key leadership posts with "his people." Upon information and belief, "his people" excluded White employees from most supervisory positions, and women and whites from all command staff positions within the police department.

(Amended Complaint, at ¶ 22 (emphasis added); *see also id*. at ¶ 64 (alleging that "because of her gender and race she was dismissed out of hand and *never considered by Hardwick*") (emphasis added)). Similarly, in her Counter 56.1 Statement, plaintiff states:

> Upon his election, *Defendant Hardwick* immediately began revamping the racial makeup of the Village of Freeport by systematically terminating and demoting qualified, experienced White supervisors and employees who he replaced with unqualified and less experienced Black and Hispanic employees.

(Plaintiff's Counter 56.1 Statement, ¶ 57 (citation omitted) (emphasis added)). Plaintiff further asserts:

> Among the many personnel decisions *Defendant Hardwick* made, he changed the command staff structure including the Chief of Police position, Assistant Chief position and Deputy Chief position.

(*Id*. ¶ 42 (citation omitted) (emphasis added)). Thus, the entire theory of plaintiff's lawsuit is that Mayor Hardwick, in fact, was the driving force behind the appointments for the Assistant Chief and Deputy Chief positions.

Moreover, the Court has summarized in its prior decisions the evidence in the record which supports plaintiff's allegations that Hardwick had more than *pro forma* involvement in the appointment, demotion, and termination process. *See, e.g.*, June 3 Memorandum and Order, 2013 WL 2405440, at *5–8, 11 (discussing Hardwick's involvement in the personnel decisions); November 20 Memorandum and Order, 2012 WL 5989657, at *16 (reasoning that evidence of discrimination included (1) Colton's statement that Hardwick wanted to replace the then current command staff with "his people"; (2) Hardwick's statements regarding his desire to have more minorities advancing through the ranks; (3) the promotion of Bermudez, a Hispanic male, to the Deputy Chief position even though he was less qualified and experienced than plaintiff; and (4) Hardwick's attempt to place Leftenant, a Black female, in the command staff even though Leftenant was unqualified). Hardwick's decisions are the subject of this lawsuit. Plaintiff claims that, "[u]pon his election, Defendant Hardwick immediately began revamping the racial makeup of the Village of Freeport by systematically terminating and demoting qualified, experienced white supervisors and employees who he replaced with unqualified and less experienced Black and Hispanic employees." (Pl. Rule 56.1 Counterstatement ¶ 57; Finkel Reply Aff. Ex. R.) Hardwick also allegedly "engaged in a pattern of consistently terminating, demoting, and refusing to promote and hire White employees in favor of Black and Hispanic employees." (*Id.* ¶ 59.) Further, although plaintiff testified that Glacken did not interview her for promotions,[8] mayoral

---

[8] Comparatively, when Hardwick was elected, he interviewed plaintiff, and they spoke for over two hours about topics such as manpower, hiring, special details, warrant sweeps, summons productivity, and procedures already in place. (Pl. Rule 56.1 Counterstatement ¶ 308, Finkel Reply Aff. Ex. Q.)

involvement in the appointment process in Freeport, beyond that in *Tranello* and *Crumpacker*, is not novel. According to Woodward, the Deputy and Assistant Chief positions were created by the Board of Trustees because Glacken wanted a certain individual in the "second in command position." (Deposition of Michael Woodward ("Woodward Dep.") at 17:13–25, Finkel Aff. Ex. F.)

In sum, the uncontroverted evidence establishes that Hardwick undertook an active role in the appointment process, and there is no basis to conclude that such involvement, in and of itself, was contrary to the Village of Freeport's laws and regulations. The fact is that, even though Hardwick was not responsible for recommending the Deputy and Assistant Chiefs of Police in the first instance, elected officials in the Village of Freeport had the *de jure* and *de facto* authority to influence the hiring, promotion, and demotion process for the Police Department's command staff positions beyond the passive approval in *Tranello* and *Crumpacker*. Therefore, the Court concludes that the first prong of the policymaker exemption test is satisfied.

b. Attributes of the Position

The second issue is whether plaintiff, as Deputy and Assistant Chief, "could have been called upon to work closely with" the appointing elected official, even if she did not in fact work closely with that official. *Butler II*, 211 F.3d at 749. Plaintiff argues that only the Chief was responsible for working closely with the Mayor and for policy development. The Court disagrees. The Rules and Regulations, and plaintiff's evidence regarding her duties as Deputy and Assistant Chief, establish that the positions satisfy the *Butler II* standard.

In *Butler II*, the Second Circuit addressed whether the plaintiff, who had been appointed Assistant Attorney General ("AAG") by the Attorney General of New York, an elected official, and promoted to Section Chief and then Deputy Bureau Chief, was an "employee" entitled to sue under Title VII. The court began by analyzing the statutory language and legislative history and noting that Congress intended that the policymaking level exemption "be construed narrowly." *Id.* at 747 (citation omitted). It held that the plaintiff was a policymaker under the exemption because (1) it was undisputed that, as Deputy Bureau Chief, she was accountable to the Attorney General; (2) plaintiff conceded that as an AAG she could have been called upon to work closely with the Attorney General, even if she did not in fact work closely with the Attorney General; and (3) as Deputy Bureau Chief, plaintiff's "supervisory authority placed her at a higher level of responsibility than most other AAGs." *Id.* at 748–49. The court did not decide whether an AAG who is not a Deputy Bureau Chief is an appointee on the policymaking level. *Id.* at 749.

Here, pursuant to the Rules and Regulations, the Deputy Chief, as commanding officer of the patrol division, is responsible for, *inter alia*, directing, coordinating, and controlling uniform police patrol services; assuming the responsibilities of the executive officer (the Assistant Chief) upon her absence; observing and evaluating the training and performance of all subordinate personnel; and supervising administration of discipline for uniformed members of the Police Department. (Rules and Regulations § 204.00 *et seq.*) The Assistant Chief must, *inter alia*, assume the command functions of the Chief of Police in her absence; supervise the performance of administrative and staff functions within the command; evaluate planning, training, personnel functions and needs of the command; oversee operations of the

12

Detective Division; and oversee departmental legal affairs. (*Id.* § 202.00 *et seq.*) The Chief of Police, meanwhile, is responsible for directing all personnel activities; issuing written and/or oral directives to members of the Police Department for the performance of duties and departmental operations; determining the areas and level of training for members of the Department; working under the general direction of the Mayor and Board of Police Commissioners; overseeing major investigations; selecting personnel for employment; consulting with the Mayor and Village Board regarding major policy decisions; and representing the Department in its dealings with other agencies and maintain personal contact with the public. (*Id.* §§ 200.00 *et seq.*)

Contrary to plaintiff's argument, the absence of any specific provision referencing her ability to make policy or work with the Mayor of Freeport does not compel the conclusion that she is not a policymaker. The *Butler II* standard is not so restrictive, and the regulations and plaintiff's own testimony and evidence specifically contemplate that the Deputy and Assistant Chiefs have supervisory roles and engage in traditional supervisory and policymaking activities. In *Butler*, the plaintiff (as Deputy Bureau Chief and in addition to the general responsibilities of an AAG) helped supervise over eighty attorneys, advised attorneys on how to proceed with litigation, reviewed and edited court papers, assigned new cases, interviewed candidates for AAG, and was consulted regarding promotion of personnel. 211 F.3d at 742. The Second Circuit did not consider whether Butler, as Deputy Bureau Chief, had the authority to "make policy." Its decision turned on her supervisory authority. *See id.* at 749. Thus, *Butler II* endorses a broader understanding of the policymaker exemption than other circuits. *See, e.g.*, *Brown v. City of Hobart, Okla.*, No. CIV-12-0189-HE, 2013 WL 1349038, at *2–3 (W.D. Okla. Apr. 2, 2013) (recognizing that Supreme Court precedent casts doubt on whether employee must actually "formulate policy" to fall within exception; reasoning that city manager position at issue involved "considerable executive authority and discretion in running the city," was not "limited only to administrative duties," and required "the exercise of discretion concerning issues of public importance"; and distinguishing the position at issue from the less discretionary and authoritative position addressed by the Tenth Circuit in *Anderson* (quoting *Gregory*, 501 U.S. at 466–67)); *Deneen v. City of Markham*, No. 91 C 5399, 1993 WL 181885, at *1–5 (N.D. Ill. 1993) (in case where plaintiff alleged termination as deputy fire chief was due to race discrimination, concluding that deputy fire chief position was covered under Title VII because job description, local ordinance, and plaintiff's affidavit indicated absence of any significant policymaking role or accountability to mayor, rather than to fire chief, and rejecting argument that possibility of filling in for absent adviser or policymaker is sufficient to warrant exempt status);[9] *Bishopp v. Dist. of Columbia*, No. 83-0417, 1984 WL 48909, at *1–2 (D.D.C. Mar. 16, 1984) (reasoning that positions at issue were not exempt from Title VII because there was no evidence that the function of these positions "should be considered the 'highest policy making' or that any advice [the plaintiffs] may provide to the mayor concerns the constitutional or legal powers of the mayor's office").

---

[9] In *Deneen*, the plaintiff claimed that his responsibilities as deputy chief were only "training, reporting fire incidents, handling the accounting of the part time payroll and responding to fire calls," rather than the broader requirements of the local ordinance. 1993 WL 181885, at *1. The court did not decide whether the job description and the local ordinance alone demonstrated that the deputy chief was not accountable to the mayor. *See id.* at *4.

As with the Deputy Bureau Chief position in *Butler*, the supervisory authority accorded to Deputy and Assistant Chiefs of Police by the Rules and Regulations places them at a higher level of responsibility than other officers, such as lieutenants and sergeants. Woodward testified that the Assistant and Deputy Chiefs "contribute to the development of policies, procedures, and training. They also assist the Chief [me] in the day-to-day operations of the police department." (Woodward Dep. at 16:12–17:1.) Plaintiff described the Deputy Chief responsibilities as including "[e]verything from scheduling training . . . , ensuring that all essential positions within the department are manned . . . , overseeing the productivity of the Lieutenants, the Sergeants, hold them accountable for the performance of their officers who work under their command . . . , that we worked together in putting together in formulating the operating budget for the Freeport Police Department, emergency management issues, incident command duties and responsibilities and planning." (Pl. Rule 56.1 Counterstatement ¶ 26; Finkel Aff. D.) She also asserted that "[t]he ultimate benefit of being a part of the command staff was the ability to take part in policy decisions geared toward moving the Department forward with the goal of benefitting the membership as well as the Village." (Declaration of Debbie Zagaja ("Zagaja Decl.") ¶ 61; Finkel Aff. Ex. E.) Moreover, while she was Acting Chief of Police in accordance with the Rules and Regulations (*see* § 202.10), plaintiff "was performing the functions of the entire command staff and completing all command staff responsibilities and duties from December 2009 through the end of January 2010." (Pl. Rule 56.1 Counterstatement ¶ 34; Finkel Aff. Ex. T.) Finally, even if plaintiff never met with the Mayor while she was Deputy or Assistant Chief, the positions at issue contemplated the possibility of close interactions. To that end, command staff met with the Mayor's Office "on a regular basis to discuss various situations that would occur, including crimes, village events, and all other relevant situations to the daily operations of the village government." (Affidavit of John J. Maguire ("Maguire Aff.") ¶ 7, Finkel Ex. C.) Plaintiff also admitted to the EEOC that the Mayor was her supervisor. (*See* EEOC Charge, Finkel Aff. Ex. I, at 3 ("Ms. Zagaja has been passed over for promotions, mistreated, demoted and otherwise denied equal and fair treatment by her male, black supervisor, the Mayor of Freeport."). The Court cannot ignore that concession.

Therefore, the Court concludes that plaintiff, while a Deputy Chief of Police and an Assistant Chief of Police, was a policymaker who could, as part of her professional duties and supervisory role, be called upon to work closely with the appointing elected official—the Mayor. Accordingly, the Court dismisses plaintiff's discrimination claims with respect to the Deputy and Assistant Chief of Police positions for lack of subject matter jurisdiction. *Butler I*, 998 F. Supp. at 344.

C. Sufficiency of the EEOC Charge

Plaintiff, assisted by counsel, filed her EEOC charge on May 5, 2010, alleging:

1. Debbie Zagaja ("Ms. Zagaja") is a white female. She files this charge in relation to the gender and race discrimination she has been and continues to be subjected to in her employment with the Village of Freeport. Further, she has been retaliated against for complaining about the disparate treatment she has received from her employer.

2. Ms. Zagaja has been passed over for promotions, mistreated, demoted

and otherwise denied equal and fair treatment by her male, black supervisor, the Mayor of Freeport.

3. Others have been promoted ahead of her, given favorable treatment and given preference because they are not female and/or white.

4. Because of this discrimination and retaliation Ms. Zagaja has suffered damages in pay, status, and to her psyche.

(EEOC Charge, at 3.) Plaintiff stated that the earliest date of discrimination was March 8, 2010. (*Id.* at 2.) On May 25, 2010, the EEOC dismissed the claim because plaintiff "provided no information with which to conduct an investigation." (*Id.* at 5.)

Defendants argue that the Chief of Police-related discrimination claim must be dismissed because the EEOC charge was impermissibly vague and the denied promotion to Chief of Police, which occurred months after the EEOC dismissed the charge, is not reasonably related to plaintiff's allegations. For the following reasons, the Court disagrees.

1. Legal Standard

To bring a Title VII discrimination claim in federal court, a plaintiff must first exhaust her administrative remedies by filing an administrative charge alleging discrimination within 300 days of the alleged discriminatory conduct. *O'Grady v. Middle Country Sch. Dist. No. 11*, 556 F. Supp. 2d 196, 199 (E.D.N.Y. 2008) (citing *Ruhling v. Tribune Co.,* No. 04 Civ. 2430 (ARL), 2007 WL 28283, at *8 (E.D.N.Y. Jan. 3, 2007) ("Under Title VII and the ADEA, a plaintiff must file an administrative charge . . . within 300 days after a claim accrues.")). This statutory filing period is "analogous to [ ] statute[s] of limitations," *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 712 (2d Cir. 1996), and, as such, "a failure to timely file a charge acts as a bar to a plaintiff's action." *Butts v. N.Y.C. Dep't of Hous. Pres. & Dev.*, No. 00 Civ. 6307 (KMK), 2007 WL 259937, at *6 (S.D.N.Y. Jan. 29, 2007); *see also McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 214 (2d Cir. 2006). This period begins to run for each discrete discriminatory act when each such act occurs. *O'Grady*, 556 F. Supp. 2d at 199.

In addition, "'claims that were not asserted before the EEOC [or an appropriate State or local agency] may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency.'" *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 177 (2d Cir. 2005) (quoting *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (per curiam)). "Reasonably related conduct is that 'which would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made.'" *Id.* (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 358 (2d Cir. 2001)); *see also Mathirampuzha v. Potter*, 548 F.3d 70, 77 (2d Cir. 2008) (stating that claim is reasonably related where "administrative complaint can be fairly read to encompass the claims ultimately pleaded in a civil action or to have placed the employer on notice that such claims might be raised"). In determining whether a claim is "reasonably related" to the EEOC charge, "'the focus should be on the factual allegations made in the [EEOC] charge itself'" and on whether those allegations "gave the [EEOC] 'adequate notice to investigate'" the claims asserted in court. *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (quoting *Deravin v. Kerik*, 335 F.3d 195, 201–02 (2d Cir. 2003)). Another type of

15

"reasonably related" claim is one alleging "further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Butts v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1402–03 (2d Cir. 1993), *superseded by statute on other grounds*, Civil Rights Act of 1991, Pub. L. No. 102-166; *Almendral v. N.Y. State Office of Mental Health*, 743 F.2d 963, 966–67 (2d Cir. 1984) (holding that district court erred in refusing to consider conduct postdating plaintiff's EEOC complaint where that conduct was "essentially the same as the earlier . . . conduct contained in the . . . complaint").

2. Application

As an initial matter, the fact that plaintiff was denied a promotion to Chief of Police after the EEOC charge was dismissed is not in itself grounds to dismiss the discrimination claim for failure to file a new EEOC charge. Assuming the charge adequately set forth allegations regarding a discriminatory demotion and/or failure to promote to the Deputy and Assistant Chief positions, then the Chief of Police claim is "reasonably related" because it is a "further incident[] of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Butts*, 990 F.2d at 1402–03.

The Court's decision is consistent with authority in this Circuit. *See, e.g.*, *Almendral*, 743 F.2d 968 ("[D]efendants' alleged acts are essentially the same as the earlier allegedly wrongful conduct contained in the EEOC complaint: namely, alleged manipulation of the civil service rules for discriminatory reasons in order to appoint someone other than Almendral."); *Rommage v. MTA Long Island Rail Rd.*, No. 08-CV-836 (DLI), 2010 U.S. Dist. LEXIS 104882, at *18 (E.D.N.Y. Sept. 30, 2010) (plaintiff's claim of termination due to unjust discipline was reasonably related to earlier EEOC complaint regarding unjust discipline, because both allegations concerned the same method of discrimination); *Barkley v. City of New York*, No. 12-CV-2159 (JG), 2014 U.S. Dist. LEXIS 182, at *42 (E.D.N.Y. Jan. 2, 2014) (holding that the third exception in *Butts* did not apply, because the method of discrimination alleged in the plaintiff's EEOC charges was not the same method of discrimination alleged in his Title VII claims in his lawsuit); *Dressler v. New York City Dept. of Educ.*, No. 10 Civ. 3769 (JPO), 2012 U.S. Dist LEXIS 44249, at *19 n.3 (S.D.N.Y. Mar. 29, 2012) (claim regarding unjust performance review was reasonably related to earlier EEOC complaint regarding unjust performance review).

Defendants also argue that the Chief of Police discrimination claim must be dismissed because the EEOC charge was impermissibly vague. "Specific factual allegations," rather than vague, generalized statements, "must be made in order for the EEOC to be able to investigate them reasonably." *Cooper v. Xerox Corp.*, 994 F. Supp. 429, 432 (W.D.N.Y. 1998). In *Butts*, the Second Circuit held that allegations that the plaintiff had "consistently been the target of discriminatory practices and treatment" from "October of 1987 to [the] present," and "denied promotional opportunities and consideration based on my race and sex," were impermissibly vague and could not "serve as predicates for allegations in the complaint." 990 F.2d at 1403 (alteration in original). The court explained, "Were we to permit such vague, general allegations, quite incapable of inviting a meaningful EEOC response, to define the scope of the EEOC investigation and thereby predicate subsequent claims in the federal lawsuit, such allegations would become routine boilerplate and Title VII's investigatory and mediation goals would be defeated." *Id.* The Court, however, accepted the claims related to plaintiff's allegation in the EEOC charge

16

that "[a]fter October 1987 . . . [the plaintiff's supervisor] held department reorganization meetings without informing me of the meetings or results," even though the charge was vague as to the exact dates of the incidents. *Id.*

Here, the Court concludes that the allegations in plaintiff's EEOC charge, although brief, are able to pass muster under *Butts*. Specifically, in the instant case, plaintiff set forth (1) her status as a white female, employment by the Village of Freeport, and general bases for her complaint; (2) the fact that she had been "passed over for promotions, mistreated, demoted, and otherwise denied equal and fair treatment" by a specific individual—her male, black supervisor, the Mayor of Freeport (Hardwick); and (3) that the events at issue began occurring on March 8, 2010. (EEOC Charge, at 2–3.) Thus, plaintiff's charge significantly provided two more details than the allegations that were found insufficient for certain claims in *Butts* – namely, plaintiff provided a specific date when the discriminatory practices began (March 8, 2010) and also attributed the conduct to a specific individual – Mayor Hardwick. A cursory investigation by the EEOC would have revealed that plaintiff was demoted from Deputy Chief to Lieutenant on March 8, 2010, which would have been sufficient information for the EEOC to investigate that claim. The fact that the plaintiff provided the specific date of the demotion in one section of the charge, but then referred to a number of discriminatory acts in another section in a generalized manner ("passed over for promotions, mistreated, demoted, and otherwise denied equal and fair treatment" by Mayor Hardwick) did not prevent the EEOC from conducting a meaningful investigation of the March 8, 2010 demotion by the Mayor, allegedly based on race and gender. In this Court's view, by providing the actual date of the demotion and the general assertion of the alleged discriminatory act, these allegations regarding more closely resemble the one claim in *Butts,* relating to department reorganization meetings, that the Second Circuit found to be sufficient to satisfy the exhaustion requirement. Moreover, as noted *supra*, the additional claims for denial of promotions (including the Chief position) were reasonably related because they allegedly were further incidents of discrimination carried out in precisely the same manner, and grew out of the demotion on March 8, 2010.

Accordingly, the Court denies the motion to dismiss for failure to exhaust on this basis. Therefore, plaintiff can maintain her Chief of Police-related discrimination claim, a cause of action "reasonably related" to the adequate allegations in the EEOC charge.

D. The Retaliation Claim and *Nassar*

When the Court denied summary judgment to defendants on plaintiff's retaliation claim, the Court applied the then-controlling "mixed motive" analysis on the issue of pretext. *See* June 3 Memorandum and Order, 2013 WL 2405440, at *13 ("[T]here is sufficient evidence in the record to create a disputed issue of fact as to whether a retaliatory motive was involved in defendants' decision. . . . Given Bermudez's relationship with Hardwick, and the other factors surrounding the employment decision, there is circumstantial evidence that defendants' failure to actually promote plaintiff to the command staff may have been motivated, at least in part, by retaliatory animus."). Defendants argue for reconsideration in light of the Supreme Court's holding in *Nassar*. For the reasons set forth below, the Court concludes that a reasonable jury could find that plaintiff's

protected activity was the "but for" cause of, among other things, defendants' failure to promote plaintiff.

### 1. Legal Standard

Under Title VII, it is unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). The Court evaluates a Title VII retaliation claim under the three-step, burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). As relevant here, if the plaintiff is able to establish a prima facie case of retaliation, the burden then shifts to the defendant to articulate a legitimate, non-retaliatory reason for the employment action. *See Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (stating that where the plaintiff succeeds in establishing a prima facie case, "then a presumption of retaliation arises and the employer must articulate a legitimate, non-retaliatory reason for the action that the plaintiff alleges was retaliatory"). If the employer carries that burden, the burden shifts back to the plaintiff to demonstrate by competent evidence that the reasons proffered by the defendant were pretext for retaliatory animus based upon the protected Title VII activity. *See Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006). Specifically, the plaintiff must establish that "but for the protected activity, [she] would not have been terminated." *Moore v. Kingsbrook Jewish Med. Ctr.*, No. 11–CV–3625 (MKB), 2013 WL 3968748, at *14 (E.D.N.Y. July 30, 2013); *see also Nassar*, 133 S. Ct. at 2534 (2013) (stating that a plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer"); *Goins v. Bridgeport Hosp.*, 555 F. App'x 70, 73–74 (2d Cir. 2014) (same).

### 2. Application

Defendants note that plaintiff alleges in the Amended Complaint that Hardwick engaged in discriminatory conduct immediately upon his election to office and that she was "dismissed out of hand and never considered by Hardwick" because she was a white female. (Amended Complaint ¶¶ 15, 29, 64.) Thus, defendants argue that, if plaintiff alleges that Hardwick would never have promoted her because of her gender or race, her protected activity could not have been the "but for" cause of her not receiving a promotion. However, the Court does not believe that those allegations are dispositive of the "but for" issue for several reasons. First, it appears that those allegations in the Amended Complaint are focused upon Hardwick's mindset when he became Mayor and sought to fill the Chief position. *See, e.g.*, *Id.* at ¶ 29 ("The Deputy Mayor informed Zagaja that he would pick her for the Chief's position if he had the opportunity. However, it was clear that the Mayor would never even consider a White Female for the position."). Plaintiff's retaliation claim is not focused on the Chief's position, but rather the unwillingness of Bermudez and Hardwick to consider her for a command staff position once she filed the lawsuit. Thus, her allegations regarding his mindset upon taking office, and filling the Chief position, are not preclusive as to his mindset later on, when plaintiff claims that she was not considered for command staff positions because of retaliation. In other words, there is nothing necessarily inconsistent with proving that Hardwick wanted to revamp the command staff (including Chief of Police) based upon race and/or gender and thus did not consider plaintiff for those positions in 2010, and also that she was later denied a command staff position because she had filed the lawsuit. Second, in addition to the denial of a command staff position, plaintiff

asserts numerous other retaliatory actions including, among other things, job assignments.

In any event, having reviewed the record in the light most favorable to plaintiff, the Court concludes (construing the evidence most favorably to plaintiff) that there is sufficient evidence from which a reasonable jury could find that plaintiff's protected activity was the "but for" cause of the denied promotion, regardless of plaintiff's subjective understanding of the situation. The determination of whether plaintiff's protected activity was the "but for" cause of the denied promotion generally should be a task best left to the jury. *See Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 n. 5 (2d Cir. 2013) ("The determination of whether retaliation was a 'but-for' cause, rather than just a motivating factor, is particularly poorly suited to disposition by summary judgment, because it requires weighing of the disputed facts, rather than a determination that there is no genuine dispute as to any material fact. A jury should eventually determine whether the plaintiff has proved by a preponderance of the evidence that she did in fact complain about discrimination and that she would not have been terminated if she had not complained about discrimination."). More importantly, according to the Second Circuit, "a plaintiff's injury can have multiple 'but-for' causes, each one of which may be sufficient to support liability." *Id.* Thus, the "but-for" standard required by *Nassar* "does not equate to a burden to show that such consideration was the 'sole' cause." *Id.* Instead, the plaintiff must establish that adverse employment action would not have occurred had she not engaged in protected activity. *Nassar*, 133 S. Ct. at 2533 (stating that proving Title VII retaliation claims according to the traditional principles of but-for causation "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer"); *see also Stoler v. Inst. for Integrative Nutrition*, No. 13-CV-1275, 2013 WL 6068598, at * 12 (S.D.N.Y. Nov. 18, 2013) ("[E]ven under the 'but-for' standard . . . an employer may be held liable . . . if other factors contributed to its taking an adverse action, as long as [the protected characteristic] was the factor that made a difference." (internal quotation marks and citation omitted) (alteration in original)); *Graham v. Three Vill. Cent. Sch. Dist.*, No. 11-CV-5182, 2013 WL 5445736, at *25 (E.D.N.Y. Sept. 30, 2013) ("To satisfy this but-for causation element, plaintiff must 'prove that [her] termination would not have occurred in the absence of a retaliatory motive.'" (quoting *Moore v. Kingsbrook Jewish Med. Ctr.*, No. 11–CV–3625 (MKB), 2013 WL 3968748, at *20 (E.D.N.Y. July 30, 2013))).

In light of the evidence detailed in the earlier Memorandums and Orders, including the fact that Bermudez stopped recommending plaintiff for promotion after her complaint in this lawsuit was filed because he could no longer "trust" her because of the allegations she made in her complaint, a reasonable jury could find, even under the more stringent *Nassar* standard, that plaintiff would not have been denied a command staff position, after the lawsuit was filed, had she not engaged in protected activity.

Accordingly, the Court again denies summary judgment to defendants on plaintiff's retaliation claim.

IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part. The Court dismisses the discrimination claims relating to the Deputy and Assistant Chief of Police positions for

19

lack of subject matter jurisdiction. Thus, the discrimination claims relating to the Deputy and Assistant Chief of Police positions must be pursued through the procedures provided in the Government Employees Civil Rights Act of 1991– namely, a final order from the EEOC with appeal to the Court of Appeals.

The Court denies the motion to dismiss for failure to exhaust administrative remedies, and denies the motion for summary judgment as to plaintiff's retaliation claim.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: June 3, 2015
 Central Islip, NY

\* \* \*

Plaintiff is represented by Robert John Valli, Jr. and Sara Wyn Kane, Valli Kane & Vagnini LLP, 600 Old Country Road, Suite 519, Garden City, N.Y. 11530. Defendants are represented by Howard Marc Miller, John Francis McKay, III, and Richard S. Finkel, Bond, Schoeneck & King, 1399 Franklin Avenue, Suite 200, Garden City, N.Y. 11530.